UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

TAMMY JO PARKS,

                                Plaintiff,

v.                                                                            Case no. 7:14-CV-1367 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
───────────────────────────────────────────────

APPEARANCES:                                      OF COUNSEL:

CONBOY, McKAY, BACHMAN & KENDALL        LAWRENCE D. HASSLER, ESQ.
  Counsel for Plaintiff
307 State Street
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.                DANIEL R. JANES, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

        Currently before the Court, in this Social Security action filed by Tammy Jo Parks ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 15.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 3, 1967. She completed the ninth grade of high school, obtained a general education development (GED) certificate, and completed training as a licensed practical nurse. Plaintiff has worked as a licensed practical nurse, a private duty nurse, and a nursing assistant. Generally, Plaintiff's alleged disability consists of major depressive disorder with fatigue, concentration and memory deficits, anxiety with panic attacks, and obstructive sleep apnea. Plaintiff's alleged disability onset date is May 1, 2009, and her date last insured is December 31, 2014.

### B. Procedural History

On March 19, 2010, Plaintiff applied for Social Security Disability Insurance Benefits. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 4, 2011, Plaintiff appeared before the ALJ, John P. Ramos. (T. 68-104.) On July 8, 2011, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 107-21.) On September 26, 2012, the Appeals Council remanded the matter for further administrative proceedings. (T. 122-25.)

On February 28, 2013, Plaintiff appeared by video for a second hearing before the ALJ. (T. 34-67.) On April 23, 2013, the ALJ issued a second written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-33.) On October 29, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 17-28.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014. (T. 17.) Second, the ALJ found that Plaintiff (1) engaged in substantial gainful activity from September 2011 to March 2012, (2) did not engage in substantial gainful activity from May 1, 2009, the alleged onset date, to September 2011, and (3) did not engage in substantial gainful activity since March 2012. (*Id.*) Third, the ALJ found that Plaintiff's depressive disorder and anxiety disorder are severe impairments, but that Plaintiff's sleep apnea, hyperlipidemia, obesity, tobacco use, fatty liver, left shoulder impairment, chondromalacia patellae, and medial joint space narrowing of the knees are not severe impairments. (T. 18-20.) Fourth, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 20-21.) The ALJ considered Listings 12.04 and 12.06. (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels. She retains the ability to understand and follow simple instructions and directions, perform simple and detailed tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with coworkers sufficiently to complete simple tasks but should avoid work requiring more complex interaction or joint efforts to achieve work goals. The claimant is able to handle simple, repetitive work-related stress in that she is able to make simple decisions directly related to the completion of her tasks and work in a stable, unchanging work environment. The claimant is able to tolerate occasional, but not frequent contact with the general public and supervisors.

(T. 21-22.) Sixth, the ALJ found that Plaintiff is unable to perform her past relevant work as a licensed practical nurse, a private duty nurse, or a nursing assistant. (T. 26.) Seventh, and

3

finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 27-28.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes five arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in determining that Plaintiff engaged in substantial gainful activity from September 2011 through March 2012 because Plaintiff's work activity during that period should be considered an unsuccessful work attempt. (Dkt. No. 12, at 10-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in assessing the severity of Plaintiff's obstructive sleep apnea. (*Id.* at 13-16.) Third, Plaintiff argues that the ALJ did not properly apply the special technique required for analyzing the severity of Plaintiff's mental impairments. (*Id.* at 16-20.) Fourth, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. (*Id.* at 21-23.) Fifth, and finally, Plaintiff argues that the ALJ erred at step five by relying on vocational expert testimony that was in response to an incomplete hypothetical and improperly restricting cross-examination of the vocational expert. (*Id*. at 23-25.)

Defendant makes five arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly concluded that Plaintiff performed substantial gainful activity from September 2011 through March 2012. (Dkt. No. 15, at 6-8 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly concluded that Plaintiff's sleep apnea was not a severe impairment. (*Id.* at 8-10.) Third, Defendant argues that the ALJ properly analyzed Plaintiff's mental impairments using the special technique. (*Id.* at 11-13.) Fourth, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 13-17.) Fifth, Defendant argues that the ALJ properly solicited testimony from the vocational expert and did not unfairly constrain Plaintiff's ability to cross-examine the vocational expert. (*Id.* at 17-18.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

5

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

6

## III. ANALYSIS

### A. Whether the ALJ Erred in Determining That Plaintiff Engaged in Substantial Gainful Activity From September 2011 Through March 2012

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 6-8 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step one of the sequential analysis, the ALJ must consider a plaintiff's work activity during the period of alleged disability. C.F.R. § 404.1520(a)(i). If a plaintiff is working and the work is substantial gainful activity, a plaintiff will be found not disabled regardless of his or her age, education, and work experience. C.F.R. § 404.1520(b). An unsuccessful work attempt will not constitute substantial gainful activity. 20 C.F.R. §§ 404.1574(c)(1), 404.1575(d)(1); SSR 05-02, 2005 WL 6491604, at *2 (Feb. 28, 2005).

Work activity that lasted between three months and six months will be considered an unsuccessful work attempt when it ended, or was reduced below substantial gainful activity earnings level, because of a plaintiff's impairment or removal of special conditions which took into account an impairment and permitted a plaintiff to work, and (i) a plaintiff was frequently unable to work because of an impairment, (ii) a plaintiff's work was unsatisfactory because of an impairment, (iii) a plaintiff worked during a period of temporary remission of an impairment, or (iv) a plaintiff worked under special conditions that were essential to performance and these conditions were removed. 20 C.F.R. §§ 404.1574(c), 404.1575(d).

Here, Plaintiff testified that she returned to full time work as a nurse in September 2011, earning $16.00 per hour. (T. 17.) The ALJ noted that Plaintiff's earning records indicate that she earned $7,792 during the four months that she worked in 2011, totaling $1,948 per month, which

7

constitutes substantial gainful activity.[1]  (*Id.*)  Although Plaintiff testified that she was fired due to poor attendance, the ALJ noted that Plaintiff told her psychiatrist that she quit her job to care for her injured mother.  (*Id.*)

In any event, the Second Circuit has found that, where an ALJ continues the disability evaluation process past step one and considers medical evidence from the entire relevant period, an error in determining that a plaintiff performed substantial gainful activity at step one is harmless.  *See Miles v. Harris,* 645 F.2d 122, 124 (2d Cir. 1981) (finding that an ALJ's erroneous determination that a plaintiff's part-time job constituted substantial gainful activity was harmless where there was substantial evidence of other substantial gainful employment that Plaintiff could perform at step five).  Here, the ALJ continued his analysis of Plaintiff's claim through the remainder of the sequential analysis.  (T. 17-28.)  As discussed below in Part III.E. of this Decision and Order, the ALJ properly determined that there was other existing work in the national economy that Plaintiff could perform.  (T. 27-28.)  Accordingly, even if the ALJ erred in determining that Plaintiff engaged in substantial gainful activity at step one, it is harmless.

For these reasons, the ALJ's step one finding was supported by substantial evidence and remand is not necessary on this basis.

### B.    Whether the ALJ Erred in Assessing the Severity of Plaintiff's Obstructive Sleep Apnea

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 15, at 8-10 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

---

[1]    Substantial Gainful Activity Monetary Amounts, Social Security Administration, http//www.ssa.gov/OACT/COLA/sga.html (last visited Feb. 5, 2016).

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The regulations define basic work activities as the "abilities and aptitudes necessary to do most jobs," with the following examples: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers, and ususal work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012); *accord, McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968, at *12 (N.D.N.Y. Mar. 27, 2008).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Stanton v. Astrue,* 370 F. App'x 231, 233 n.1 (2d Cir. 2011); *Ellis,* 2012 WL 5464632, at *5.

Here, a review of the entire decision indicates that the ALJ's step two determination was supported by substantial evidence and that the ALJ properly considered the effects of Plaintiff's combined impairments in the remainder of the sequential analysis. At step two, the ALJ noted that Plaintiff was diagnosed with "severe sleep apnea" based on a polysomnogram performed on

9

January 12, 2011. (T. 18.) The ALJ noted that "there is no suggestion, however, that the diagnosing doctor's definition of 'severe' is the same as the definition established by the Social Security Act, Rules, and Regulations." (*Id.*) The ALJ determined that the evidence of record did not indicate that Plaintiff's sleep apnea caused more than minimal work-related limitations for 12 consecutive months. (*Id.*) The ALJ noted that physician, A. Melynne Youngblood, M.D., who treated Plaintiff for sleep apnea, was asked to complete a medical source statement which she returned blank and unsigned. (*Id.*) Further, the ALJ noted that Dr. Youngblood's treatment notes do not suggest that Plaintiff had any functional limitations resulting from her sleep apnea. (*Id.*)

The ALJ noted that, immediately after Plaintiff was diagnosed with sleep apnea in January 2011, she was prescribed continuous positive airway pressure ("CPAP") therapy. (T. 18.) The ALJ noted that Plaintiff sought no treatment for her sleep apnea from March 2011 to October 2012. (*Id.*) Further, the ALJ noted that Plaintiff's treatment records since October 2012 showed that her sleep apnea events had been completely eliminated and that her symptoms of daytime fatigue or sleepiness had improved with CPAP therapy. (*Id.*) The ALJ noted that Plaintiff has a CPAP machine, but does not always use it as directed. (*Id.*)

In any event, where "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. § 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). Here, the ALJ found that Plaintiff's depressive disorder and anxiety disorder are severe impairments, and therefore the ALJ did not deny benefits based on lack of a severe impairment. (T. 18.)

Additionally, the ALJ properly considered the effects of Plaintiff's combined impairments in the remainder of his analysis and included limitations in the RFC for Plaintiff's combined impairments. (T. 21-55.) For example, the ALJ considered Plaintiff's sleep apnea diagnosis, reported symptoms, and treatment notes in assessing Plaintiff's RFC and evaluating Plaintiff's credibility. (T. 23.) Accordingly, even if the ALJ's failure to find Plaintiff's sleep apnea severe at step two of the sequential analysis is error, it is harmless. *Ellis*, 2012 WL 5464632, at *5; *Tyron*, 2012 WL 398952, at *3.

Therefore, the ALJ's assessment of Plaintiff's sleep apnea was supported by substantial evidence, and remand is not necessary on this basis.

### C. Whether the ALJ Properly Applied the Special Technique in Assessing the Severity of Plaintiff's Mental Impairments

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 11-13 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The regulations require application of a special technique at the second and third steps of the five-step framework for evaluating the severity of mental impairments. 20 C.F.R. § 404.1520a. When applying the special technique, the ALJ must first decide whether a plaintiff has a medically determinable impairment, and then rate the degree of functional limitation resulting from the impairment in four broad areas. 20 C.F.R. § 404.1520a(b)-(c). The four areas, or "paragraph B" criteria, are: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Each of the first three areas is rated on a five-point scale of "none," "mild," "moderate," "marked," and "extreme." 20 C.F.R. § 404.1520a(c)(4). The fourth area is rated on a four-point scale of "none," "one or two," "three," and "four or more." *Id.*

11

If the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that a plaintiff's mental impairment is not severe and will deny benefits. 20 C.F.R. § 404.1520a(d)(1)*; Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011); *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008). Notably, the psychiatric review technique and RFC assessment are two separate analyses. *See* SSR 96-8p, 1996 WL 374184, at *4 [July 2, 1996]) ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment.")

Application of the psychiatric review technique must be documented and the ALJ's written decision must reflect application of the technique and include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. § 404.1520a(e); *Kohler*, 546 F.3d at 266 (remanding where the ALJ did not adhere to the special technique requirements). Failure to follow the psychiatric review technique is error and results in an inadequately developed record with regard to the four functional areas. *Kohler*, 546 F.3d at 267. Where the court cannot identify findings regarding the degree of a plaintiff's limitations to discern whether the ALJ properly considered all evidence relevant to those areas, the court cannot determine whether the ALJ's decision is supported by substantial evidence and reflects application of the correct legal standards. *Id.* at 269.

Here, the ALJ made a specific finding regarding Plaintiff's limitations in each of the four functional areas set forth in 20 C.F.R. § 404.1520a(c)(4). (T. 20-21.) First, the ALJ determined that Plaintiff had mild limitation in activities of daily living. (T. 20.) The ALJ noted that Plaintiff could dress, bathe, and groom herself on a regular basis, cook and prepare food, clean, do laundry, shop, manage money, and drive. (*Id.*) The ALJ noted that Plaintiff spent her days

doing chores, going for short walks, and reading. (*Id.*) Further, the ALJ noted that, during the period of alleged disability, Plaintiff cared for her injured mother, attended college full time, and worked full time as a nurse. (*Id.*)

Second, the ALJ determined that Plaintiff had no more than moderate limitation in social functioning. (*Id.*) The ALJ noted that Plaintiff reported difficulty getting along with friends and family, and did not use public transportation. (*Id.*) However the ALJ noted that Plaintiff reported no problems getting along with bosses, teachers, police, landlords, or other authority figures, and never lost a job due to problems getting along with others. (*Id.*) The ALJ noted that, upon examination on June 10, 2010, consultative examiner, Dennis Noia, Ph.D., observed that Plaintiff's demeanor and responsiveness to questions was cooperative and that her manner of relating, social skills, and overall presentation were adequate. (*Id.*) Finally, the ALJ noted that Plaintiff returned to work as a nurse in September 2011, which requires frequent, if not constant, interaction with others, suggesting that Plaintiff believes that she is able to interact with others. (*Id.*)

Third, the ALJ determined that Plaintiff had mild limitation in concentration, persistence, or pace. (T. 20-21.) The ALJ noted that mental status exams indicated that Plaintiff's cognition was grossly intact, attention and concentration were intact, cognitive functioning appeared to be within the average range, and insight and judgment were fair. (*Id.*) The ALJ noted that treating psychiatrist, Sadaqat Khan, M.D., consistently reported that Plaintiff's cognition was intact. (T. 21.) Finally, the ALJ noted that Plaintiff took college courses on a full time basis and earned a 4.0 grade point average during the period of alleged disability. (*Id.*)

Fourth, and finally, the ALJ determined that Plaintiff had no episodes of decompensation that have been of extended duration. (*Id.*) The ALJ noted that Plaintiff was never hospitalized for psychiatric treatment, and there was no evidence that Plaintiff had any episodes of decompensation since her alleged onset date. (*Id.*)

The Court finds that the ALJ properly applied the special technique for evaluating Plaintiff's mental impairments. The analysis was complete and supported by substantial evidence in the record, including the psychiatric review technique completed by State agency psychologist, Dr. V. Reddy, on May 15, 2010, with the same findings. (T. 503.) Additionally, in determining the RFC, the ALJ considered this detailed mental assessment and accounted for the findings. (T. 20-22.) Specifically, the ALJ accounted for Plaintiff's moderate limitation in social functioning by limiting her to occasional contact with the general public and supervisors, and found that she could relate and interact with coworkers sufficiently to complete simple tasks, but should avoid work requiring more complex interaction or joint efforts to achieve work goals. (*Id.*) The ALJ accounted for Plaintiff's mild limitation in concentration, persistence, or pace by limiting Plaintiff to simple, repetitive work related tasks in environments that were stable and unchanging and required her to make only simple decisions directly related to the completion of her tasks. (*Id.*)

Therefore, remand is not necessary on this basis.

**D.** **Whether the ALJ Erred in Assessing Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 13-17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

14

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a

claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements regarding the intensity, persistence and limiting effects of her symptoms are not fully credible. (T. 22.) In assessing Plaintiff's allegations, the ALJ determined that Plaintiff's complaints were not supported by the evidence of record, including medical evidence and examination notes, Plaintiff's daily activities, and Plaintiff's full time work and full time college course work taken during the time period in which she alleges disability. (T. 22-26.)

First, the ALJ found that Plaintiff's allegations of disabling symptoms were not well supported by the medical evidence of record and treatment history. (*Id.*) The ALJ noted that Plaintiff complained of symptoms related to sleep apnea including daytime fatigue or sleepiness. (*Id.*) The ALJ noted that Plaintiff was diagnosed with sleep apnea in January 2011, but did not seek treatment for the impairment from March 2011 to October 2012, "shortly after the case was remanded for further development of the evidence relating to her sleep apnea." (*Id.*) The ALJ found that Plaintiff's lack of treatment "until she was alerted of the need for additional evidence in relation to her disability case suggests that this condition is not very bothersome." (*Id.*) Further, the ALJ noted that Plaintiff's treatment records since October 2012 showed that her sleep apnea events had been completely eliminated and that her symptoms of daytime fatigue or sleepiness had improved with CPAP therapy. (T. 18.) The ALJ noted that Plaintiff has a CPAP machine, but does not always use it as directed. (*Id.*)

16

Second, the ALJ noted that Plaintiff's allegations of disabling symptoms were not well supported by the medical evidence of record regarding her mental impairments and symptoms. (T. 22-26.) The ALJ noted that Plaintiff's psychiatric symptoms worsened in late 2009 in response to the death of her husband, but that her symptoms quickly improved with medication and therapy. (T. 23.) The ALJ noted that, in May 2010, Plaintiff reported that she felt much better and was feeling well. (*Id.*) The ALJ noted that Plaintiff was assigned global assessment of functioning ("GAF") scores of 55, indicating moderate psychiatric symptoms.[2] The ALJ noted that Plaintiff's mental health treatment records indicated that Plaintiff's symptoms generally continued to improve, including notes that Plaintiff was less anxious and less depressed, was doing better and was more confident. (T. 23-24.)

Third, the ALJ found that Plaintiff's allegations of disabling symptoms were inconsistent with her daily activities. (T. 20, 25.) For example, the ALJ noted that Plaintiff reported that she is able to shop in stores. (T. 25.) Elsewhere in the decision, the ALJ noted that Plaintiff could dress, bathe, and groom herself on a regular basis, cook and prepare food, clean, do laundry, shop, manage money, and drive. (T. 20.) The ALJ further noted that Plaintiff did chores, went for short walks, read, and cared for her injured mother. (*Id.*)

Fourth, the ALJ found that Plaintiff's allegations of disabling symptoms were inconsistent with her demonstrated ability to work full time and take college courses full time during the period of her alleged disability. (T. 24.) The ALJ noted that Plaintiff was interviewing for work as a nurse in March 2011, and was working full time as a nurse at a

---

[2] A GAF score of 51 to 60 indicates moderate symptoms (i.e., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (i.e., few friends, conflicts with peers or co-workers.) *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) (DSM-IV).

dialysis center by September 2011. (*Id.*) The ALJ determined that this evidence suggests that Plaintiff's mental impairments are not as severe as alleged. (T. 23.)

Finally, the ALJ noted that Plaintiff began college in September 2012 and was studying to become a social worker. (T. 24.) The ALJ noted that Plaintiff earned straight A marks in college courses and received recognition on the President's List for her grades. (T. 23.) The ALJ found that Plaintiff's ability to take college courses and earn A marks significantly undermines her credibility regarding the severity of her mental impairments. (*Id.*)

For these reasons, the ALJ's credibility analysis was supported by substantial evidence. Accordingly, remand is not required on this basis.

### E. Whether the ALJ's Step Five Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there are a significant number of jobs in the national economy that a plaintiff can perform based on the plaintiff's RFC, age, education, and past relevant work. 20 C.F.R. § 404.1512(g), 404.1560(c); *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). The ALJ can usually establish that there is other work that a plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]). However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at 603.) A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Baldwin*, 2009 WL 4931363, at *27.

Here, the ALJ provided a hypothetical to the vocational expert that included Plaintiff's abilities and restrictions set forth in the RFC to determine whether Plaintiff could perform other existing work in the national economy. (T. 27-28, 55-58.) The vocational expert testified that, based on Plaintiff's RFC, age, education, and work experience, Plaintiff could perform jobs that exist in significant numbers in the national economy. (T. 27-28.)

First, Plaintiff essentially argues that the ALJ erred in relying on vocational expert testimony that was in response to a hypothetical that did not accurately represent Plaintiff's nonexertional limitations. (Dkt. No. 12, at 23 [Pl.'s Mem. of Law].) Because the Court finds no error in the ALJ's RFC assessment, as discussed above in Part III.B. and Part III.C. of this Decision and Order, we conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on the RFC. *Dumas*, 712 F.2d at 1553-54 (approving a hypothetical question to a vocational expert that was based on an assumption supported by substantial evidence in the record).

Second, Plaintiff argues that the ALJ denied Plaintiff the right to cross-examine the vocational expert regarding Plaintiff's nonexertional limitations as outlined by Plaintiff's treating physician. (Dkt. No. 12, at 24[Pl.'s Mem. of Law].) To be sure, Plaintiff has the due process right to cross-examine a vocational expert and present rebuttal evidence. *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984). However, a review of the hearing transcript indicates that Plaintiff's counsel attempted to present a hypothetical containing Dr. Khan's assessment in medical terms, rather than vocational terms. The ALJ did not improperly restrict Plaintiff's right to cross-examine the vocational expert, but directed Plaintiff "to translate what the doctor is saying into vocational terminology." (T. 62.) The ALJ was effectively assisting Plaintiff's counsel by directing him to present a hypothetical with functional limitations that correspond to the terms used by the vocational expert to determine whether Plaintiff could perform other existing work. (T. 60-63.)

Therefore, the ALJ's determination at step five of the sequential analysis was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: February 11, 2016
      Syracuse, New York

                                              Hon. Glenn T. Suddaby
                                              Chief U.S. District Judge